UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

---

| | |
|---|---|
| SILK TITLE HOLDINGS LLC, )<br>    Plaintiff )<br> )<br>VS. )<br> )<br> )<br>FIFTH THIRD BANK, N.A., )<br>    Defendants ) | C.A. No: _____ |

---

# COMPLAINT

## PARTIES

1. Plaintiff, Silk Title Holdings LLC ("Silk Title") is a limited liability company organized and existing under the laws of the State of Delaware with a principal place of business in Warwick, Rhode Island.

2. Defendant, Fifth Third Bank, National Association ("Fifth Third Bank") is a national banking association organized under the laws of the United States with its main office in Cincinnati, Ohio. Fifth Third Bank operates a commercial bank in Tampa, Florida.

## JURISDICTION

3. This Court has subject matter jurisdiction over this action, pursuant to 28 U.S.C. §1332, because Silk Title and Fifth Third Bank are diverse and the amount in controversy exceeds the sum of seventy-five thousand dollars ($75,000.00).

4. This Court has jurisdiction over Fifth Third Bank as Fifth Third Bank has sufficient minimum contacts with this District. Moreover, the claim underlying this litigation directly arises out of, and relates to, Fifth Third Bank's activities in this District. Those contacts within the District represent a purposeful availment of the privilege of conducting activities within the forum,

making Fifth Third Bank's involuntary presence before this Court to be foreseeable. Furthermore, an exercise of jurisdiction by this Court over Fifth Third Bank is reasonable.

5. Venue is proper in this District pursuant to 28 U.S.C. §1391(b)(2), because a substantial part of the acts giving rise to the instant action occurred in this District.

## GENERAL ALLEGATIONS

6. Silk Title provides title insurance, search and settlement services across the United States to top institutional banks and independent mortgage brokers. In addition, Silk Title provides services for foreclosure, default, Real Estate Owned, and traditional real estate transactions.

7. Silk Title, in the normal course of its business, opens and maintains numerous bank accounts related to its title, real estate transaction, and escrow services.

8. Upon information and belief, Fifth Third Bank established a team lead within its Financial Institution Group to focus on marketing Fifth Third Bank to companies in the title and escrow servicing industry.

9. Upon information and belief, Fifth Third Bank created a position called Financial Institutions Group Treasury Management Team Lead and Title & Escrow Servicing position to more effectively market Fifth Third Bank to the title and escrow servicing industry.

10. Upon information and belief, Fifth Third Bank marketed the possibility of providing incentive fees (hereinafter, "Placement Fee Incentives") to entities in the title and escrow services industry to incent those entities to transfer their banking relationships to Fifth Third Bank.

11. At all times relevant hereto, Larrry Chapman, CTP & CERTL CM ("Chapman") held the position of Vice President of Financial Institutions Group Treasury Management Team Lead and Title & Escrow Servicing at Fifth Third Bank working out of Fifth Third Commercial Bank in Tampa, Florida.

12. Upon information and belief, Chapman, as a team lead with regard to the title and escrow servicing industry, reported to Eric Heuser ("Heuser") who held, at all times relevant hereto, the position of Senior Vice President, Treasury Management at Fifth Third Bank. Moreover, upon information and belief, Chapman and Heuser reported to Kevin Hipskind ("Hipskind"), who held the position, at all times relevant hereto, of Regional Head of Commercial Bank at Fifth Third Bank.

13. At all times prior to March of 2022, Silk Title maintained all of its bank accounts at another financial institution, Wells Fargo, and had done so for a number of years.

14. Some time prior to March 4, 2022, Fifth Third Bank undertook a targeted marketing initiative to communicate directly with Silk Title's principal at Silk Title's offices in Warwick, Rhode Island, to try and convince Silk Title to change its banking relationship and begin an exclusive banking relationship with Fifth Third Bank.

15. On or about April 5, 2022, Silk Title began a borrower-lender relationship with Fifth Third Bank by taking out a line of credit (the "$1M LOC"). The $1M LOC was renewed on or about April 5, 2023 and then, renewed for a second time on or about July 4, 2023. Moreover, on April 8, 2022, Fifth Third Bank issued a $1M credit card to Silk Title.

16. On or about March 4, 2022, Silk Title opened a limited number of bank accounts at Fifth Third Bank, but did not utilize those accounts.

17. As part of Fifth Third Bank's targeted marketing initiative, in July of 2023, Chapman on behalf of Fifth Third Bank communicated directly with Silk Title's principal at Silk Title's offices in Warwick, Rhode Island to set up an incentive program to offset banking fees to further incent Silk Title to transfer its banking relationship to Fifth Third Bank.

18. In August of 2023, Chapman communicated directly with Silk Title's principal at Silk offices in Warwick, Rhode Island about extending the $1M LOC. During those discussions, Chapman pressed Silk Title's principal about Silk Title moving all of its bank accounts out of Wells Fargo to Fifth Third Bank. Chapman outlined a proposal where Fifth Third Bank would extend a $500,000.00 interest free loan to Silk Title for sixteen (16) months in order to incent Silk Title to start the process of transferring its banking relationship from Wells Fargo to Fifth Third Bank.

19. Silk Title informed Chapman that it could take six months to a year to make such a transfer.

20. In response thereto, Chapman suggested that he would advocate for a $500,000.00 Placement Fee Incentive (the "August 2023 Placement Fee Incentive") to be issued to Silk Title to use to payoff the line of credit with Wells Fargo, if Silk Title would commit to expediting a transfer of all of its bank accounts from Wells Fargo to Fifth Third Bank.

21. Silk Title accepted that offer. The August 2023 Placement Fee Incentive was issued by Fifth Third Bank.

22. With Fifth Third Bank's approval, Silk Title utilized the August 2023 Placement Fee Incentive to pay off its remaining line of credit with Wells Fargo.

23. Then, Silk Title with knowledge of Fifth Third Bank began to transfer bank accounts from Wells Fargo to Fifth Third Bank.

24. In extending the August 2023 Placement Fee Incentive credit, Chapman communicated to Silk Title that the proposal had been reviewed by Fifth Third Bank's credit team at multiple credit team meetings. In addition, Chapman communicated with Silk Title that the August 2023 Placement Fee Incentive had been advocated for and supported by Hipskind.

25. In turn, Chapman communicated that Hipskind had attended the credit meetings to address any credit team concerns.

26. Moreover, in outlining the August 2023 Placement Fee Incentive, Chapman outlined what a bank like Wells Fargo made "off a title company's deposits" and thus, Chapman was criticizing Wells Fargo for not providing those types of incentives to Silk Title.

27. Chapman set forth his point that Fifth Third Bank would recoup the August 2023 Placement Fee Incentive within a year of Silk Title transferring its bank accounts.

28. Upon information and belief, Fifth Third Bank analyzed and identified what it would make in fees and other compensation in deciding to issue Silk Title the August 2023 Placement Fee Incentive.

29. Furthermore, Chapman in his discussion with Silk Title's principal in Silk Title's offices in Warwick, Rhode Island, referred to the August 2023 Placement Fee Incentive as the "first placement incentive". Thereafter, Chapman stated that he was working with Fifth Third Bank to offer a second placement fee credit to further incent Silk Title to accelerate its transition of all its bank accounts to Fifth Third Bank by year end, 2023.

30. Chapman wanted to incent Silk Title to be in position to move all of its accounts over to Fifth Third Bank in 2023, because industry projections were showing that in 2025, the title and escrow services industry was projected to experience another growth cycle.

31. Therefore, it was Fifth Third Bank's stated marketing goal to have Silk Title transfer all of its bank accounts into Fifth Third Bank before the 2025 uptick in the industry and to establish a long-term partnership in which Silk Title would remain with Fifth Third Bank for a number of years.

32. Towards the end of August 2023, Chapman was communicating with Silk Title's principal at Silk Title's offices in Warwick, Rhode Island about further extending the $1M LOC.

33. In early October of 2023, Chapman was working with other individuals at Fifth Third Bank including Heuser and Hipskind to lay out certain options for Silk Title to address the $1M LOC and to further incent Silk Title to accelerate its transfer of its bank accounts from Wells Fargo to Fifth Third Bank by year end, 2023.

34. The option that Chapman advocated for at Fifth Third Bank was to advance an additional $1M Placement Fee Incentive that could be utilized by Silk Title to pay off the $1M LOC.

35. Ultimately, in October of 2023, Chapman in direct discussions with Silk Title's principal at Silk Title's offices in Warwick, Rhode Island, offered to advance a "$1M Placement Fee Incentive" that could be utilized by Silk Title to pay off the $1M LOC, if Silk Title committed to move all of its bank accounts from Wells Fargo to Fifth Third Bank by year end, 2023.

36. Silk Title accepted the offer and began the costly process of expediting the transfer of all bank accounts from Wells Fargo to Fifth Third Bank by year end, 2023.

37. On October 24, 2023, Chapman informed Silk Title's principal at Silk Title's offices in Warwick, Rhode Island that the $1M Placement Fee Incentive had been approved. Silk Title had discussions with Chapman confirming the approval and that the money would be used by Silk Title to pay off the $1M LOC.

38. Upon information and belief, Fifth Third Bank did projections on what it would make from fees and other compensation assuming that Silk Title moved all of its bank accounts over to Fifth Third Bank and the title and escrow industry did, in fact, experience an uptick beginning in 2025 to justify the $1M Placement Fee Incentive.

39. On October 27, 2023, Chapman sent an e-mail to Silk Title with a copy to the following representatives of Fifth Third Bank: Michael LeFevre ("LeFevre"), Heuser, and Kellie Dickerson ("Dickerson") attaching a payoff letter for Silk Title's records, indicating that the $1M LOC had been paid off. The October 27, 2023 e-mail is attached hereto as **Exhibit A**.

40. Silk Title's online banking records included the Fifth Third Bank transactional document for the $1M Placement Fee Incentive, which was dated October 4, 2023, that was countersigned by two (2) additional Fifth Third Bank employees. The confirmation of the $1M Placement Fee Incentive is attached hereto as **Exhibit B**.

41. In reliance thereon, Silk Title moved its banking relationship over to Fifth Third Bank before year end, 2023 and directed monies to other business initiatives as opposed to paying off or extending the $1M LOC.

42. On or about November 6 and November 8 of 2023, Fifth Third Bank officials communicated with Silk Title and indicated that Chapman had been terminated and that the $1M Placement Fee Incentive was being classified as an "interest error".

43. The first e-mail communication from Fifth Third Bank taking the position that the $1M Placement Fee Incentive was somehow now being called an "interest error" was sent by Heuser, who was the Senior Vice President of Treasury Management that was involved in approving the $1M Placement Fee Incentive.

44. Subsequently, Fifth Third Bank unilaterally reversed the payoff of the $1M LOC and on November 16, 2023, demanded that the $1M LOC be paid in full, immediately and that Silk Title immediately exit its banking relationship with Fifth Third Bank.

45. It was not until on or about December 6, 2023 that Fifth Third Bank also took the position that the August 2023 Placement Fee Incentive was also being unilaterally reversed without

explanation whatsoever and Fifth Third Bank took the position that Silk Title owed Fifth Third Bank an additional $500,000.00.

46. Upon information and belief, Fifth Third Bank took such a position with regard to the August 2023 Placement Fee Incentive, so that Fifth Third Bank could also take the position that it was somehow out of Fifth Third Bank's course of business to offer Placement Fee Incentives.

## Count I
### Breach of Contract

47. Silk Title and Fifth Third Bank entered into a valid and enforceable contract to provide Placement Fee Incentives.

48. Silk Title performed in accord with the terms of said contract. In turn, Fifth Third Bank provided and documented the Placement Fee Incentives.

49. In response thereto, Silk Title incurred significant expense in transitioning its entire banking relationship away from Fifth Third Bank.

50. Fifth Third Bank breached the terms of said contract by unilaterally reversing the Placement Fee Incentives and characterizing the $1M Placement Fee Incentive as an "interest error" and then, demanding repayment of the August 2023 Placement Fee Incentive four (4) months after its issuance.

51. As a result of said breach, Silk Title has incurred damages resulting from Fifth Third Bank's unilateral reversal of the agreed-upon incentives and Silk Title has and shall continue to incur substantial costs in expediting a withdrawal of its banking business from Fifth Third Bank.

WHEREFORE, Silk Title requests judgment enter in its favor and against Fifth Third Bank in an amount as proven at trial, plus attorneys fees, cost, interest, and such other relief as this Court deems appropriate.

## Count II
### Breach of Implied-in-Fact Contract

52. Silk Title realleges and incorporates by reference paragraphs 1-51 of this Complaint, as if set forth in its entirety.

53. There was mutual agreement by and between Silk Title and Fifth Third Bank to offer and accept Placement Fee Incentives.

54. There was an intent on behalf of Fifth Third Bank to promise to provide such Placement Fee Incentives.

55. The promise is to be implied from the facts surrounding Fifth Third Bank's issuance of the Placement Fee Incentives.

56. As a result, Fifth Third Bank's promise is an implied-in-fact contract and should be enforced.

WHEREFORE, Silk Title requests judgment enter in its favor and against Fifth Third Bank in an amount as proven at trial, plus attorneys fees, cost, interest, and such other relief as this Court deems appropriate.

## Count III
### Promissory Estoppel

57. Silk Title realleges and incorporates by reference paragraphs 1-56 of this Complaint, as if set forth in its entirety.

58. Fifth Third Bank made a clear and unambiguous promise to provide Placement Fee Incentives to Silk Title and Fifth Third Bank did, in fact, provide such Placement Fee Incentives.

59. Silk Title reasonably and justifiably relied upon the promise.

60. Silk Title relied upon the promise to its detriment.

61. Injustice can only be avoided by the enforcement of the promise.

WHEREFORE, Silk Title requests judgment enter in its favor and against Fifth Third Bank in an amount as proven at trial, plus attorneys fees, cost, interest, and such other relief as this Court deems appropriate.

## Count IV
### Negligent Misrepresentation

62. Silk Title realleges and incorporates by reference paragraphs 1-61 of this Complaint, as if set forth in its entirety.

63. Fifth Third Bank made a factual representation regarding the provision of Placement Fee Incentives that agents of Fifth Third Bank believed to be true.

64. Fifth Third Bank failed to exercise reasonable care or competence to obtain or communicate true information.

65. Fifth Third Bank owed a duty to Silk Title to exercise reasonable care and competence to obtain and communicate true information.

66. Fifth Third Bank intended to induce Silk Title to rely on the misrepresentation.

67. As an approximate result thereof, Silk Title has suffered damages in justifiable reliance on the misrepresentation.

WHEREFORE, Silk Title requests judgment enter in its favor and against Fifth Third Bank in an amount as proven at trial, plus attorneys fees, cost, interest, and such other relief as this Court deems appropriate.

                                                Plaintiff, Silk Title Holdings, LLC
                                                By its Attorney,

                                                /s/W. Mark Russo
                                                W. Mark Russo #3937
                                                Ferrucci Russo Dorsey, P.C.
                                                207 Quaker Lane, Ste. 301
                                                West Warwick, RI 02893
                                                Tel.: (401) 455-1000
Dated: December 14, 2023              Email: mrusso@frlawri.com